**KEIST THURSTON O'BRIEN, P.C.**
Joel N. Thurston, Esq. #032314
23131 N. Lake Pleasant Parkway
Peoria, Arizona 85383
Telephone: (623) 937-8888
Joel@ktolawfirm.com
courtney@ktolawfirm.com
*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | |
|---|---|
| Carl Scarlata, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> Jamie Ryan, et. al., <br><br> Defendants. | Case No.: 3:23-cv-08111-DJH <br><br> Joint Case Management Report |

1. **A list of the parties in the case, including any parent corporations or entities (for recusal purposes)**

   Parties:
   Carl Scarlata, Plaintiff
   Jamie Scarlata, Plaintiff
   Jamie Ryan, Defendant, Department of Child Safety
   Nora Jenkins, Defendant, Department of Child Safety
   Kaitlynn Lewis, Defendant, Department of Child Safety
   Scott Chasan, Defendant, Department of Child Safety
   Amy Wilhite, Defendant, Department of Child Safety
   Lisa Watts, Defendant, Department of Child Safety
   Carol Brady, Defendant, Department of Child Safety
   Susan Balensky, Defendant, Department of Child Safety
   Savannah Sanders, Defendant

**2. A short statement of the nature of the case (3 pages or less), including a description of each claim and each affirmative defense, and identifying the factual and legal issues genuinely in dispute**

As an initial matter, having conferred with counsel for Defendants, Plaintiffs will be moving the Court for dismissal of Defendant Lisa Watts from the case, and also dismissing the Fifth Claim.

    A. First claim: Claim Against Defendants Ryan, Lewis, Wilhite, Jenkins, and Sanders: First and Fourteenth Amendment Violation in Unconstitutional Seizure of the Minors

All Defendants save Defendant Sanders are alleged to have been employed by the Arizona Department of Child Safety [hereafter, "AZDCS"] at the time of the actions alleged. The seizure of Plaintiff's daughters on June 14, 2021 was in violation of Plaintiffs' First and Fourteenth Amendment right to familial association, not supported by any evidence of imminent danger of physical or sexual abuse that would occur in the time it would take the named Defendants to secure a Court Authorized Removal, and was accomplished by the cooperation and action of Defendant Sanders, who was a willful participant in the unconstitutional action

Authorities as to the removal:

*Rogers v. Cty. of San Joaquin,* 487 F.3d 1288, 1297 (9th Cir. 2007); *Demaree v. Pederson,* 887 F.3d 870 (9th Cir. 2018); *Daschke v. Hartenstein,* 420 F. Supp 3d 919 (D. Ariz. 2019) (Zipps., J.); *Birair v. Kolycheck,* 2018 U.S. Dist. LEXIS 150671 (D. Ariz. September 5, 2018) (Humetewa, J.)

Authorities as to Defendant Sanders private party liability:

*Collins v. Womancare,* 878 F.2d 1145, 1154 (9th Cir.1989); *Kirtley v. Rainey,* 326 F.3d 1088, 1092 (9th Cir. 2003); *Rawson v. Recovery Innovations, Inc.,* 975 F.3d 742, 747 (9th Cir. 2020); *Deeths v. Lucile Slater Packard Children's Hosp.,* 2013 U.S. Dist. LEXIS 83457 *34 (E.D. Cal. June 12, 2013)

Authorities as to supervisor liability:

Supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of a constitutional violation. A supervisor is liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them.

*Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *Starr v. Baca*, 652 F.3d 1202, 1205-06 (9th Cir. 2011); *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009); Ninth Circuit Manual of Model Jury Instructions [Civil] ¶9.3

   Defense Against First Claim:

DCS Defendants Ryan, Lewis, Jenkins, and Wilhite had reasonable cause to believe that the minors would experience serious bodily harm before they could obtain a warrant for a court authorized removal, based on Plaintiffs' history of evading DCS investigations and the statements and observations of the minors.

DCS Defendant Wilhite was a trainee at the time of the removal and had no input into or authority over the decision to remove.

All DCS Defendants are entitled to qualified immunity because the particular circumstances that they faced have not been found to clearly violate the First and Fourteenth Amendment right to familial association.

DCS Defendants deny that any supervisory liability exists, that any defendant implemented any policy that constituted a repudiation of constitutional rights, or that any supervisory claim can be based on a policy as *Monell* claims are inapplicable against these defendants.

Defendant Sanders denies participating in the removal in any way; she met the Scarlata daughters and DCS defendants for the first time after the removal occurred.

Defendant Sanders denies liability for unconstitutional removal; even had she engaged in the alleged pre-removal communications with the Scarlata daughters and DCS defendants, these interactions did not constitute "joint action" with a state official as required for a private individual to be liable for civil rights

violations. *West v. Atkins*, 487 U.S. 42, 49 (1988). *Adickes v. S. H. Kress & Co.,* 398 U.S. 144 (1970). *Tsao v. Desert Palace, Inc*., 698 F.3d 1128, 1140 (9th Cir. 2012). *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 192 (1988 Smith v. *N. Star Charter Sch., Inc.,* 593 F. App'x 743, 744 (9th Cir. 2015). *Gillis v. Chapman,* No. 6:17-CV-00705-AA, 2022 WL 991669, at *10–11 (D. Or. Mar. 31, 2022), *appeal dismissed*, No. 22-35840, 2023 WL 3050120 (9th Cir. Jan. 25, 2023)

To the extent Defendant Sanders' alleged conduct did amount to participation in the unconstitutional removal, she is entitled to a good faith defense because she "had no reason to suspect that there would be a constitutional challenge to [her] actions." *Clement v. City of Glendale*, 518 F.3d 1090, 1097 (9th Cir. 2008).

B. Second Claim: Claim Against Defendants Chasan, Ryan, and Jenkins: Judicial Deception in Securing *Ex Parte* Removal Order

Defendants Chasan, Ryan, and Jenkins violated Plaintiffs' right to due process under the Fourteenth Amendment by recklessly or intentionally misrepresenting facts material to Court Authorized Removal they submitted on June 17, 2021, and omitting other facts material to the decision. They made such material misrepresentations and omissions in the Team Decision Making (TDM) meeting summary, "Case Plan Staffing" meeting summary, and Application and Declaration for Ex-Parte Removal of Children.  Without these significant material misrepresentations and omissions, a neutral magistrate would not have concluded probable cause existed for *ex parte* removal of the minor children.
Authorities:

*Costanich v. Dep't of Soc. & Health Scv's,* 627 F. 3d 1101 (9th Cir. 2010); *Tatum v. Moody* , 768 F.3d 806, 821 (9th Cir. 2016); *Gantt v. City of Los Angeles*, 717 F.3d 702, 708 (9th Cir. 2013); *Benavidez v. County of San Diego,* 993 F. 3d 1134 (9th Cir. 2021); *Stein v. Depke,* 2023 U.S. Dist. LEXIS 164463 (D. Ariz. September 14, 2023) (Hinderacker, J.). *Stein v. Depke,* 2022 U.S. Dist. LEXIS 66650 (D. Ariz. April 8, 2022).

Defense Against Second Claim:

DCS Defendants deny making any material misrepresentations and deny omitting any material facts. To the extent any misrepresentations were made, they were not material to the issuance of the Court Authorized Removal because the accurate facts presented were sufficient to demonstrate probable cause and no relevant omissions—if any—were sufficient to defeat probable cause.

C. Third Claim: Claim Against Chasan, Jenkins, and Ryan: Fourteenth Amendment Judicial Deception in Securing the Prosecution of the Dependency

Defendants Chasan, Jenkins, and Ryan submitted a Petition Worksheet for purposes of an Assistant Attorney General's completion of a Dependency Petition which was also laden with material misrepresentations and omissions of exculpatory facts.. Then, a Report to the Juvenile Court for Preliminary Protective Hearing and/or Initial Dependency Hearing was prepared and filed which augmented the lies and misrepresentations previously documented by Defendants. The AZDCS Defendants continued to conceal facts known to them which refuted the allegations of dependency, causing the juvenile judge to issue *ex parte* Temporary Orders confirming the department's custody of the children.

Authorities:

See, authorities applicable to supervisory liability and judicial deception

Defense Against Third Claim:

DCS Defendants deny making any material misrepresentations and deny omitting any material facts. To the extent any misrepresentations were made, they were not material to the filing of a dependency petition or court report because the accurate facts presented were sufficient to demonstrate probable cause and no relevant omissions—if any—were sufficient to defeat probable cause. DCS Defendants further deny that any attorney-client privileged information communicated to their attorneys via a petition worksheet or direct communications for drafting a dependency petition can support any judicial-deception claim.

DCS Defendants' decision to seek a dependency was prosecutorial in nature and shielded by absolute immunity.

D. Fourth Claim: Claim Against Chasan, Jenkins, and Ryan: First Amendment Retaliation

The Plaintiffs and extended family members of the minor children voiced their complaints and concerns regarding the actions taken by Defendants, which were protected expression under the First Amendment. In retaliation to this expression, AZDCS Defendants prepared the Application and Declaration for Ex-Parte Removal of Children, secured the *Ex* Parte Court Authorized Removal Order, and submitted documents and information to induce the Assistant Attorney General to file and prosecute the Dependency Petition.

Authorities:

*Wright v. Southern Arizona Children's Advocacy Center,* 2022 U.S. Dist. LEXIS 179104 ** 41-42 (D. Ariz. September 30, 2022) (Zipps, J.) (addressing Ninth Circuit authorities and applying those to actions taken by AZDCS staff).

Defense Against Fourth Claim:

DCS Defendants deny that they retaliated against Plaintiffs in any way. They further deny that any extended family members have any standing to raise a retaliation claim or whose constitutionally protected speech could lead to a retaliation claim against the DCS Defendants. The Assistant Attorneys General who filed the dependency petition or who prosecuted the dependency petition are not defendants; and DCS Defendants' decision to seek a dependency was prosecutorial in nature and shielded by absolute immunity.

All DCS Defendants are entitled to qualified immunity because the particular circumstances that they faced have not been found to clearly violate the First Amendment right to protected expression.

E. Sixth Claim: Claim Against Chasan, Brady, Balensky, and Sanders: First and Fourteenth Amendment Violations: Violation of Free Exercise of Religion

Plaintiffs repeatedly expressed their concern and fear for the children's physical welfare in Defendant Sanders' custody, but also for their spiritual

welfare in a foster home that did not hold moral and religious values consistent with Plaintiffs' Christian beliefs and practices. The AZDCS Defendants rejected Plaintiffs' concerns and collaborated with Sanders in covering up and suppressing the negative outcomes for Plaintiff's daughters, which included being tattooed, consuming alcohol, and being sexually assaulted. Plaintiffs' free exercise of religion was violated by AZDCS Defendants and Sanders' disregard for their moral and religious values when determining the placement of the minor children and in the subsequent actions intended to frustrate Plaintiffs' instruction of their daughters' religious practices.

Authorities:

*McGowan v. Maryland,* 366 U.S. 420, 429, 6 L. Ed. 2d 393, 81 S. Ct. 1101 (1961); *Collins v. Chandler Unified Sch. Dist.*, 644 F.2d 759, 764 n. 1 (9th Cir.), cert. denied, 454 U.S. 863, 70 L. Ed. 2d 163, 102 S. Ct. 322 (1981); *Grove v. Mead School Dist.*, 753 F.2d 1528, 1531 (9th Cir. 1985); *Fleischfresser v. Directors of School Dist.* 200, 15 F. 3d 680, 684 (7th Cir. 1994) (all holding that parents' right to direct and control minor children's religious practices is a parental right upon which the state infringes when it interferes with that right).

Defenses Against Sixth Claim:

DCS Defendants did not infringe on Plaintiff's rights to freely exercise their religious beliefs.  Plaintiffs lack standing to assert the religious practice of the minors.  Moreover, Plaintiffs' right to direct and control the minors' religious practices was limited while the minors were in State custody.  *See Kirwin v. Kot*, CV2200471, 2023 WL 4746644, at *11 (D. Ariz. July 25, 2023) ("DCS Defendants were granted custody of A.K. by the court, thus limiting the parents right to the care, custody and control, including the right to the free exercise of religious influence over their child, including decisions regarding their child's religious practices").

Defendant Sanders did not violate the Scarlatas' free exercise of religion. Parents have no "constitutional right to insist that their children receive state-sponsored parenting under the religious auspices preferred by the parents. So long as the state

-7-

"makes reasonable efforts to assure that the religious needs of the children are met during the interval in which the state assumes parental responsibilities," it has met its requirements. *Wilder v. Bernstein*, 848 F.2d 1338, 1347 (2d Cir. 1988). Here, the Scarlatas have not alleged that Ms. Sanders acted in any way to prevent the Scarlata children from meeting their religious needs.

Defendant Sanders' Counterclaims.

Plaintiffs and their attorneys provided Ms. Sanders with a draft version of their complaint (which falsely alleged that Ms. Sanders was a prostitute and a drug addict) and a letter promising that they would remove her from the complaint if she "cooperated." Mrs. Scarlata personally gave Ms. Sanders the same assurances. Ms. Sanders contacted Plaintiffs' counsel and at their request, gave them a recorded interview. Plaintiffs' attorneys then informed her that her statements were "contradictory to the facts" and that they thus would continue to name her as a defendant.

    A. Breach of Contract against Carl and Jamie Scarlata.

To prevail on a breach of contract claim in Arizona, a Plaintiff must demonstrate that 1) a valid contract existed; 2) the defendant breached the contract; and 3) that the breach resulted in damages. Steinberger v. McVey ex rel. Cty. of Maricopa, 234 Ariz. 125, 140 (App. 2014). Here, the Scarlatas formed a valid contract with Defendant Sanders in which they promised not to file a lawsuit against her in exchange for her agreeing to an interview with their attorneys. The Scarlatas breached the contract when they filed the lawsuit after Ms. Sanders provided the requested interview. Ms. Sanders is damaged because she now faces the prospect of at least one year of litigation and will demand specific performance of the promises made to her.

    B. Breach of the Covenant of Good Faith and Fair Dealing against Carl and Jamie Scarlata.

    In Arizona, a party breaches the covenant of good faith and fair dealing "by exercising express discretion in a way inconsistent with a party's reasonable expectations and by acting in ways not expressly excluded by the contract's terms but which nevertheless bear adversely on the party's reasonably expected benefits of the bargain." Bike Fashion Corp. v. Kramer, 202 Ariz. 420, 424 ¶ 14 (App.

2002). Here, Carl and Jamie Scarlata promised Ms. Sanders that if she "cooperated" with their attorneys, she would not face litigation. Because that cooperation did not yield the results they hoped for, they filed suit anyway and attempted to deprive her of the benefit of her bargain. Ms. Sanders is entitled to specific performance of that benefit, specifically dismissal of the suit against her.

C. Fraud against Carl and Jamie Scarlata

In Arizona, a party seeking to establish fraud must show:

> '(1) A representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; (9) his consequent and proximate injury.'

*Carrel v. Lux*, 101 Ariz. 430, 434, 420 (1966). Here, the Scarlatas promised Ms. Sanders that they would not file a lawsuit against her if she cooperated with their attorneys. That statement was false, because after Ms. Sanders complied with the attorneys' request for an interview, they filed the suit against her anyway because they did not like the content of her interview. The Scarlatas knew the statement was false because they intended not to file the lawsuit only if Ms. Sander's answers suited their purposes. They intended for Ms. Sanders to believe that they would comply with their promise regardless of whether they "liked" her answers, which Ms. Sanders could not have known. Ms. Sanders justifiably relied on their representations and cooperated with their requests. She now faces months of stress and inconvenience as a result of relying on the Scarlata's representation.

Because the Scarlata's fraudulent actions were guided by a wanton disregard for Ms. Sanders' interests, she will seek punitive damages.

3. **The jurisdictional basis for the case, describing the basis for jurisdiction and citing specific statutes, if any;**

The claims asserted by Plaintiffs are brought to vindicate rights guaranteed Plaintiffs under §42 USC §1983. The Court has jurisdiction of this case under federal question jurisdiction §28 U.S.C. §1331. Venue is proper in this Court pursuant to 28 U.S.C. §1391.

4. **Parties which have not been served and an explanation of why they have not been served; and any parties which have been served but have not answered or otherwise appeared, including fictitious parties. Unless any party can otherwise show cause, an order shall accompany the Joint Case Management Report dismissing any party which has not been served, naming fictitious or unnamed parties, or seeking default judgment on any non-appearing party.**

All parties have been served.

5. **A statement of whether any party expects to add additional parties to the case or otherwise to amend pleadings (the Court will set a deadline of not later than 60 days from the issuance of the Rule 16 Scheduling Order);**

N/A

6. **A list of contemplated motions and a statement of the issues to be decided by these motions;**

Plaintiffs contemplate a possible motion for summary judgment on some claims upon completion of discovery.

DCS Defendants contemplate filing a Motion to Dismiss Counts II, III, IV, and VI. In the event such claims persist through discovery, DCS Defendants contemplate filing a Motion for Summary Judgment contesting the sufficiency of the evidence and asserting applicable affirmative defenses including qualified immunity.

Defendant Sanders intends to file a Motion to Dismiss Counts I and VI. In the event such claims persist through discovery, Defendant Sanders contemplates filing a Motion for Summary Judgment contesting the sufficiency of the evidence and asserting applicable affirmative defenses.

7. **Whether the parties will consent to the assignment of this action to a United States Magistrate Judge in accordance with 28 U.S.C. § 636(c);**

No

8. **The status of related cases pending before other courts or other judges of this Court;**

   N/A

9. **A statement of when the parties exchanged or will exchange Fed.R.Civ.P.26(a) Initial Disclosures;**

   November 10, 2023

   DCS Defendants and Defendant Sanders intend to file Motions to Dismiss. Accordingly, pursuant to Fed. R. Civ. P. 12(a)(4), the time to answer the claim not subject to the Motion should be automatically tolled. *See Huifang Zhang v. United States*, C19-1211-RSM, 2020 WL 2114500, at *11 (W.D. Wash. May 4, 2020) (noting that "the majority of courts interpreting Fed. R. Civ. P. 12(a)(4) [hold] that filing a partial motion to dismiss will suspend the time to answer those claims or counterclaims that are not subject to the motion.") (internal quotation marks omitted).

   Plaintiffs oppose tolling of the time for Defendants to answer the First Claim, wrongful removal. There is no mandatory precedent in this Circuit that the Defendants opposing a claim which, if the allegations are true, subjects the Defendants so named to liability as a matter of law, and is not dependent on disposition of the claims contested by motion to dismiss, can simply not respond, thus putting that claim in *limbo* until other claims are ruled on. There is good authority that the defendant must answer or file an explanation why those allegations are not admitted. *See, e.g., 19 Recordings Ltd. v. Sony Music Entmt't,* 97 F. Supp 3d 433, 447 (S.D.N.Y. 2015). Such a requirement would neither serve judicial efficiency nor promote confusion.

10. **A written plan relating to disclosure or discovery of electronically stored information, including the form or forms in which it will be produced (see Fed.R.Civ.P 16(b)(3)(B)(iii); Fed.R.Civ.P. 26(f)(3) (C));**

    Plaintiffs:

    Electronically stored information will be produced in its original form.

DCS Defendants:

The DCS Defendants anticipate disclosing electronic files or data to the parties in pdf, text-searchable format. DCS Defendants will serve discovery requests electronically instead of by U.S. Mail. DCS Defendants will also accept discovery requests served electronically.

Defendant Sanders:

Defendant Sanders anticipates disclosing electronic files or data to the parties in pdf format. Defendant Sanders will serve discovery requests electronically instead of by U.S. Mail. Defendant Sanders will also accept discovery requests served electronically.

11. **A discussion of any issues relating to claims of privilege or work product (see Fed.R.Civ.P. 16(b)(3)(B)(iv); Fed.R.Civ.P. 26(f)(3)(D));**

Plaintiffs anticipate no issues.

DCS Defendants assert under Rule 502 that any inadvertent disclosure of privileged information or work product does not operate as waiver of the privilege.

Defendant Sanders asserts under Rule 502 that any inadvertent disclosure of privileged information or work product does not operate as waiver of the privilege.

12. **A discussion of necessary discovery, including:**
    a. **The extent, nature, and location of discovery anticipated by the parties;**

PLAINTIFFS:

Plaintiffs expect to engage in submission of written discovery requests and requests for admission, followed by the taking of depositions.

DCS Defendants:

DCS Defendants expect to engage in all permissible discovery under the Rules of Civil Procedure.

      Defendant Sanders:

      Defendant Sanders expects to engage in all permissible discovery under the Rules of Civil Procedure.

    **b. The scope of discovery and whether discovery should be conducted in phases or should be limited to focus on particular issues;**

      FRCP

      DCS Defendant and Defendant Sanders submit that discovery should not proceed in phases and should be conducted within the presumptive limits of the Rules of Procedure.

    **c. Suggested changes, if any, to the discovery limitations imposed by the Federal Rules of Civil Procedure;**

PLAINTIFFS:

Given the number of named Defendants, and known persons with discoverable knowledge, Plaintiffs do not believe a limit of a total of ten (1) depositions furthers the complete preparation necessary. Plaintiffs submit that the Court grant each side leave to take up to fifteen (15) depositions, and, if necessary, to approach the Court if it becomes clear additional depositions are necessary.

DCS Defendants:

DCS Defendants believe that the number of claims and defendants in this action will be significantly reduced before trial. Accordingly, DCS Defendants believe that the presumptive limits should apply: limit of ten (10) depositions per Rule 30; and limit of twenty-five (25) interrogatories per Rule 33. Defendants propose to limit the number of Rule 36 Requests for Admissions to twenty-five (25), including discrete subparts, and the number of Rule 34 Requests for Production to twenty-five (25), including discrete subparts.

The DCS Defendants will circulate a draft Protective Order seeking to protect any confidential information in the DCS records to be disclosed. If the parties cannot agree on

the proposed language, the DCS Defendants will file a Motion for Protective Order with a Proposed Order.

Defendant Sanders believes that the number of claims and defendants in this action will be significantly reduced before trial. Accordingly, Defendant Sanders believes that the presumptive limits should apply: limit of ten (10) depositions per Rule 30; and limit of twenty-five (25) interrogatories per Rule 33. Defendants propose to limit the number of Rule 36 Requests for Admissions to twenty-five (25), including discrete subparts, and the number of Rule 34 Requests for Production to twenty-five (25), including discrete subparts.

    d. **The number of hours permitted for each deposition, unless modified by agreement of the parties. See Fed.R.Civ.P. 30(d)(1)**

    DCS Defendants propose a limit of 7 hours per deposition, unless modified by agreement of the parties or on order of the Court.

    Defendant Saunders opposes this limit because it may impede the Defendants' ability to uncover factual material necessary to present an adequate defense.

13. **Proposed specific dates for each of the following:**

    a. **A deadline for the completion of fact discovery**
    November 31, 2024

    b. **Dates for complete expert disclosures under Federal Rule of Civil Procedure 26(a)(2)(A)-(E), including separate dates for plaintiffs' expert disclosure, defendants' expert disclosure, and for rebuttal expert disclosure**

    Plaintiffs' Expert Disclosure: June 31, 2024

    Defendants' Expert Disclosure: July 30, 2024

    Rebuttal Expert Disclosure: September 30, 2024

    c. **A deadline for completion of all expert depositions;**

November 31, 2024

**d. A deadline for filing dispositive motions, including any Daubert motion that may be dispositive of an issue;**

January 1, 2025

**e. A date by which the parties shall have engaged in face-to-face good faith settlement talks;**

June 31, 2024

**f. Whether a jury trial has been requested and whether the request for a jury trial is contested and, if so, the reasons why the request is contested;**

Yes, Jury Trial is Requested.

**g. The estimated length of trial; and**

Twenty-one days

**h. The prospects for settlement, including any request of the Court for assistance in settlement efforts, including referral to a United States Magistrate Judge for the limited purposes of settlement.**

Settlement communications have been exchanged and discussions ensued.

14. **Additional matters for the Court's consideration**

**PLAINTIFFS:**

Plaintiffs request that this Court set periodic in-person conferences for the parties to bring to the Court's attention and direction specific discovery issues that may arise between the parties. Plaintiffs submit that this procedure will further the efficient, inexpensive resolution of the claims and defenses.

DCS Defendants:

N/A

DEFENDANT SANDERS:

Defendant Sanders does not believe this is necessary. It is anticipated that the parties will work and resolve issues in a cooperative manner.

The parties have stipulated to the following briefing schedule:

Deadline to file Motions to Dismiss: December 1, 2023
Deadline to file Oppositions to Motions to Dismiss: January 1, 2024
Deadline to file Replies to Oppositions to Motions to Dismiss: February 1, 2024

**RESPECTFULLY SUBMITTED** this 23rd day of October, 2023.

| /s/ Joel N. Thurston | /s/Joel N. Thurston with permission for |
|---|---|
| **JOEL N. THURSTON, ESQ.** | **MICHAEL GARTH MOORE, ESQ.** |
| Co-Counsel for Plaintiffs | Co-Counsel for Plaintiffs |
| Joel N. Thurston, Esq. #032314 | Michael Garth Moore, Esq., #023742 |
| 23131 N Lake Pleasant Parkway | 6336 N. Oracle Rd. Ste 326, #119 |
| Peoria, AZ 85383 | Tucson, AZ 85704 |
| Telephone: 623-937-8888 | Telephone: 520-437-9440 |
| joel@ktolawfirm.com | mike@mgmoorelaw.com |

| | |
|---|---|
| **/s/ Joel N. Thurston w/ permission for**<br>**CHRISTOPHER WHITE, ESQ.**<br>Counsel for Defendants Ryan,<br>Jenkins, Lewis, Chasan, Wilhite,<br>Watts, Brady, and Balensky<br>Christopher White, Esq.<br>416 W Congress, 2nd Floor<br>Tucson, Arizona 85701-1315<br>Telephone: 520-638-2805<br>Christopher.White@azag.gov<br>Claudia.Collings@azag.gov | **/s/ Joel N. Thurston w/ permission for**<br>**MARK D. LAMMERS, ESQ.**<br>Counsel for Defendant Sanders<br>Mark D. Lammers, Esq.<br>6363 North Swan Road, Suite 151<br>Tucson, AZ 85718<br>Telephone: 520.529.4269<br>mdlammers@rllaz.com |

CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of October, 2023, I caused the foregoing document to be transmitted electronically to parties and counsel, and Notice of Electronic Filing to the Clerk's Office using the CM/ECF System for Filing to the Following:

| | |
|---|---|
| Joel N. Thurston, Esq.<br>Co-Counsel for Plaintiffs<br>Joel@ktolawfirm.com<br><br>Michael Garth Moore, Esq.<br>Co-Counsel for Plaintiffs<br>mike@mgmoorelaw.com | Christopher White, Esq.<br>Counsel for Defendants Ryan, Jenkins, Lewis, Chasan, Wilhite, Watts, Brady, and Balensky<br>Christopher.White@azag.gov<br>Claudia.Collings@azag.gov<br><br>Mark D. Lammers, Esq.<br>Counsel for Defendant Sanders<br>mdlammers@rllaz.com |

**RESPECTFULLY SUBMITTED** this 23rd day of October, 2023.

| | |
|---|---|
| **/s/ Joel N. Thurston**<br>**JOEL N. THURSTON, ESQ.**<br>Co-Counsel for Plaintiffs<br>Joel N. Thurston, Esq. #032314<br>23131 N Lake Pleasant Parkway<br>Peoria, AZ 85383<br>Telephone: 623-937-8888<br>joel@ktolawfirm.com | **/s/ Joel N. Thurston w/ permission for**<br>**MICHAEL GARTH MOORE, ESQ.**<br>Co-Counsel for Plaintiffs<br>Michael Garth Moore, Esq., #023742<br>6336 N. Oracle Rd. Ste 326, #119<br>Tucson, AZ 85704<br>Telephone: 520-437-9440<br>mike@mgmoorelaw.com |